UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-958 (JCH) |
| v. | : | |
| | : | |
| DANNEL MALLOY, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CONNECTICUT, et al. | : | DECEMBER 2, 2013 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 16)**

**I.   INTRODUCTION**

Plaintiff National Shooting Sports Foundation ("NSSF") brings this action against several Connecticut state officials in their official capacities (collectively, the "defendants"):  Governor Dannel Malloy; Speaker of the House of Representatives J. Brendan Sharkey; President Pro Tempore of the Senate Donald Williams, Jr.; Attorney General George Jepsen; Chief State's Attorney Kevin Kane; and Commissioner of the Department of Emergency Services and Public Protection Reuben Bradford.  NSSF seeks a declaration invalidating Senate Bill 1160 ("SB 1160") as well as an injunction barring the law's enforcement on the grounds (1) that SB 1160 was enacted in violation of state law governing legislative process; (2) that it did not pass both houses, as required by the Connecticut Constitution; and (3) that its enactment violated due process, as guaranteed under the state as well as federal constitutions.

Defendants move to dismiss NSSF's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6).  For the reasons stated below, defendants' Motion (Doc. No. 16) is **GRANTED**.

**II.    BACKGROUND**

NSSF is a national trade association based in Newtown, Connecticut. See Compl. (Doc. No. 1) at ¶ 6.  NSSF's membership includes over 200 members in Connecticut, including both businesses and individuals whose respective commercial interests and right to bear arms are allegedly adversely affected by SB 1160.  Id. ¶¶ 7, 9-10.

Signed into law by Governor Malloy on April 4, 2013, SB 1160 is part of state gun control legislation enacted in the wake of the shootings at Sandy Hook Elementary School in Newtown, Connecticut on December 14, 2012.  See Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 16-1) at 2-5.  In the instant action, NSSF does not challenge the substance of SB 1160.

Rather, NSSF's Complaint alleges, in principal part, that Speaker Sharkey and Senator Williams introduced SB 1160 through the emergency certification process under section 2-26 of the Connecticut General Statutes, without proper certification.  Id. ¶¶ 1, 34-38.  The Complaint alleges, further, that Speaker Sharkey and Senator Williams thereby circumvented the safeguards of the normal legislative process, id. ¶¶ 2, 39; that, due to the improper certification, SB 1160 did not pass both houses before purportedly being signed by Governor Malloy, id. ¶¶ 40-43; and that, despite the allegedly invalid passage and signature into law of SB 1160, Governor Malloy and others in the executive branch continue to enforce the law, id. ¶ 46.

Section 2-26 of the Connecticut General Statutes requires printing the bill in its final form and making it available on the General Assembly's website at least two legislative days prior to the law's final passage.  See Conn. Gen. Stat. § 2-26.  Section 2-26 permits these procedures to be bypassed only where both the president pro

tempore of the Senate and the speaker of the House of Representatives certify, "in writing, the facts which in their opinion necessitate an immediate vote on such bill." Id. In the case of SB 1160, Speaker Sharkey and Senate President Pro Tempore Williams certified the bill based on the following: "[I]n accordance with Rules 9 and 17 of the Joint Rules of the 2013 Regular Session, to pass an act concerning gun violence prevention and children's safety." See Ex. A to Compl. Although NSSF concedes that section 2-26 "contains no criteria for determining what facts are sufficient to necessitate an immediate vote," Compl. ¶ 28, NSSF alleges that emergency certification of SB 1160 was "facially defective and invalid" because the certification failed to supply any facts, id. ¶ 35.

NSSF further alleges that, as a result of SB 1160's improper certification, citizens of Connecticut were denied the opportunity to have their voice heard by the legislature and incorporated into the final law. Id. ¶ 33. In the instant action, NSSF seeks, therefore, not only to invalidate SB 1160, whose enforcement is alleged to injure NSSF members, id. ¶¶ 9-10, but also to prevent unwarranted circumvention of the normal legislative process and to vindicate Connecticut citizens' federal and state constitutional rights, which rights "have been adversely affected and significantly restricted" by abuse of the emergency certification procedure. Id. ¶ 4.

### III. STANDARD OF REVIEW

#### A. Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the district court lacks the statutory or constitutional power to adjudicate the case. Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008). Although the court takes all facts alleged in the complaint as true, subject matter jurisdiction must be

shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting jurisdiction. Id. Hence, on a Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion, the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction exists. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

      B.      Failure to State a Claim

A case is properly dismissed under Rule 12(b)(6) if the Complaint fails to allege facts sufficient "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As articulated by the Supreme Court in Iqbal and Twombly, the standard for dismissal on a Rule 12(b)(6) motion reflects two working principles. See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013). First, the court's customary acceptance of all allegations in a complaint does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Hence, to survive a motion to dismiss, a complaint must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. Second, assuming the truth of all well-pleaded factual allegations, and drawing all reasonable inferences in the plaintiff's favor, the district court must determine whether these allegations and inferences plausibly entitle the plaintiff to relief—that is, whether the complaint shows "more than a sheer possibility that a defendant has acted unlawfully." Id. This second task is context-specific and

"requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

## IV. DISCUSSION

NSSF's claims are in the nature of legislative due process. See Pl.'s Opp'n (Doc. No. 24) at 7, 9. All four counts of NSSF's Complaint hinge on the alleged failure by state officials to comply with the procedural requirements of section 2-26. The defendants move to dismiss because, inter alia: (1) NSSF lacks standing to bring these claims; (2) the state's Eleventh Amendment immunity from suit bars federal courts from adjudicating these claims; and (3) the Complaint fails to plausibly state a claim for violations of due process under the U.S. Constitution.

Where, as here, a motion to dismiss is made on the ground that the court lacks subject matter jurisdiction as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first, since lack of subject matter jurisdiction may render the other challenges moot. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir.1990); 5B Charles Alan Wright et al., Federal Practice and Procedure § 1350 (3d ed. 2013) ("[W]hen the motion [to dismiss] is based on more than one ground, the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge."). Because the court determines that NSSF lacks standings to bring the present claims, the court declines to reach defendants' alternative grounds for dismissal under the Eleventh Amendment and Rule 12(b)(6).

A plaintiff association, such as NSSF, has standing "to bring suit in its own name on behalf of its members if: '(a) its members would otherwise have standing to sue in

their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 144 (2d Cir. 2006) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)). Under the first prong of the analysis, an individual member of the plaintiff association has standing to sue if: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S 555, 560-61 (1992))).

     NSSF's Complaint founders on the threshold requirement under Lujan that its members have suffered an injury in fact, that is, a "concrete and particularized" invasion of some "legally protected interest." 504 U.S. at 560. By NSSF's own characterization, the present action seeks to vindicate the state and federal constitutional rights of all Connecticut citizens, which rights allegedly "have been adversely affected and significantly restricted by the passage of SB 1160 through an abuse of the 'emergency certification' procedure." Compl. ¶ 4. At bottom, the rights asserted are to take part in the legislative process and "to have the State Executive and Legislative branches act only within the authority granted by the Connecticut Constitution and the limitations imposed on them by statute." Id. ¶¶ 32-33, 44.

These rights belonging to the public generally, however, do not confer standing on members of the public to sue state officials for failure by the legislature to follow proper legislative procedure.  NSSF's Complaint does no more than state a "generally available grievance about government," which grievance is insufficient to support standing under Lujan.  504 U.S. at 573-574.  "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."  Id.

NSSF's recourse to the alleged pecuniary injury to its members from the enforcement of SB 1160 is also unavailing, because that injury is incidental to the instant case.  See Pl.'s Opp'n at 14 ("NSSF's claims are based upon the direct injury to its members' businesses and livelihoods that resulted from the purported enactment of SB 1160, which imposes numerous additional restrictions and requirements on the sale of firearms and ammunition.").  Although pecuniary injury clearly suffices for standing in general, there is no "logical nexus" between that injury and the claims asserted here. Flast v. Cohen, 392 U.S. 83, 102 (1968) ("[I]n ruling on standing, it is both appropriate and necessary to look to the substantive issues . . . to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated."); see Linda R.S. v. Richard D., 410 U.S. 614, 617-18 (1973) ("[A]ppellant has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention.").

NSSF would doubtless be content to have SB 1160 invalidated, and the state barred from enforcing the law, on any ground. Such declaratory and injunctive relief would also doubtless redress the claimed pecuniary injury. However, the commercial interests allegedly invaded by the law's enforcement share no "logical nexus" with the legislative due process claims asserted in this action and cannot be parlayed into standing to assert those claims. Gun control legislation passed without the alleged procedural defects would result in identical injuries.[1] "Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power." Flast, 392 U.S. at 102. Here, the claimed pecuniary injury makes NSSF a proper party to challenge gun control legislation. That injury, however, does not make NSSF—or any other member of the public aggrieved only incidentally by procedurally defective legislation—into a proper party to challenge the defects in legislative process.

The legislative due process claims asserted in the present suit are, in fact, classic instances of the sort of "generalized grievances" rejected by the Supreme Court and this Circuit on numerous occasions. See, e.g., Lujan, 504 U.S. at 573-78 (reviewing such cases); In re U.S. Catholic Conference (USCC), 885 F.2d 1020, 1031 (2d Cir. 1989) (reviewing available theories of standing and their limitations).

---

[1] In fact, as the defendants point out, many provisions of SB 1160 have been repealed and replaced by subsequent non-emergency legislation (Senate Bill Number 1094), which Governor Malloy signed into law on June 18, 2013, prior to the filing of the instant Complaint. See Def's Mem. at 5, 13, 15-16 n.6. Not only did NSSF fail to mention the superseding legislation in its Complaint; NSSF has also declined to identify which, if any, provisions of current law suffer from the alleged procedural defects. See Pl.'s Opp'n at 13-14 n.8. Related threshold issues, such as redressability and mootness, are clearly implicated here.

While the absence of that information raises other justiciability issues, the court views NSSF's lack of standing as sufficient grounds for dismissal without addressing these alternative grounds.

Because the pecuniary injury asserted as the basis for NSSF's standing is unrelated to the rights of democratic participation in the legislative process that NSSF seeks to vindicate, the court lacks the authority to adjudicate the claims put forward in this case. Accordingly, the case must be dismissed for lack of standing.[2]

## V.   CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's Motion to Dismiss (Doc. No. 16). The Clerk is hereby directed to close this case. Based on plaintiff's filings and answers to the court's questions at oral argument, the court concludes that the plaintiff would be unable to replead to satisfy the standing requirement.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of December, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[2] In light of NSSF's lack of standing, the court need not—and does not—reach other grounds offered by the defendants in their Motion. However, it bears emphasizing that, although the present Ruling assumes a violation of section 2-26 could supply the basis for a due process claim, that assumption is highly dubious. In Patterson v. Dempsey, 152 Conn. 431 (1965), the Connecticut Supreme Court held that the General Assembly's passage of a law in violation of a statutory provision dictating legislative process shall be deemed to suspend the contradictory statute. Id. at 439 ("The effect is really that of repeal by implication. 'When expressions of the legislative will are irreconcilable, the latest prevails.'" (quoting Moran v. Bens, 144 Conn. 27, 30 (1956))).